1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

11 **KATHERINE STOLZ,** an individual,    )
   **EDWARD STOLZ,** an individual, and  )
12 **TERREA STOLZ,** and individual,      )    03:11-cv-00762-HU
                                          )
13            Plaintiffs,                 )
                                          )    **FINDINGS AND**
14      vs.                               )    **RECOMMENDATION**
                                          )
15 **ONEWEST BANK,** a California         )
   Corporation, **MORTGAGE ELECTRONIC**  )
16 **REGISTRATION SYSTEM, INC.,** a       )
   Delaware Corporation, **REGIONAL**     )
17 **TRUSTEE SERVICES CORPORATION,** a    )
   Washington Corporation, and           )
18 **FEDERAL NATIONAL MORTGAGE**          )
   **ASSOCIATION,** a government          )
19 sponsored Enterprise,                  )
                                          )
20            Defendants.                 )
              _____

21
   Michael D. O'Brien
22 OLIVEROS & O'BRIEN PC
   9200 SE Sunnybrook Blvd., Suite 150
23 Clackamas, OR 97015

24      Attorney for Plaintiffs

25 William L. Larkins, Jr.
   Danielle J. Hunsaker
26 Cody B. Hoesly
   LARKINS VACURA LLP
27 621 SW Morrison, Suite 1450
   Portland, OR 97205

28

   FINDINGS AND RECOMMENDATION    1

1 | Jennifer Tait
Lisa McMahon-Myhran
2 | ROBINSON TAIT, P.S.
710 Second Avenue, Suite 710
3 | Seattle, WA 98104

4 |     Attorneys for Defendants

5 | HUBEL, Magistrate Judge:

6 |                    **Introduction**

7 |     Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6),

8 | defendants OneWest Bank, FSB ("OneWest"), Mortgage Electronic

9 | Registration Systems, Inc. ("MERS"), Federal National Mortgage

10 | Association ("Fannie Mae"), and Regional Trustee Services

11 | Corporation ("Regional")[1] (collectively, "Defendants") move to

12 | dismiss plaintiffs Katherine Stolz, Edward Stolz, and Terrea

13 | Stolz's (hereinafter, "Plaintiffs") complaint in its entirety. For

14 | the reasons set forth below, Defendants' motion (dkt. #10) should

15 | be GRANTED in part and DENIED in part.

16 |                    **Background[2]**

17 |     On or about December 4, 2007, Katherine Stolz signed a

18 | Promissory Note in favor of Premier Mortgage Group Inc.

19 | ("Premier"), whereby she borrowed $325,000 from Premier. (Compl.

20 | ¶ 8.) As security for the Promissory Note, Katherine Stolz granted

21 | Premier a Deed of Trust[3] against her property located at 29202 SE

22 | _____

23 |     [1] Regional joined, in its entirety, OneWest, MERS, and Fannie
24 | Mae's motion to dismiss  (Doc. #16)

25 |     [2] Unless otherwise indicated, the following facts are taken
from Plaintiffs' complaint filed on June 23, 2011.

26 |
27 |     [3] The Deed of Trust "purports to allow the Promissory Note,
together with the Security Instrument, to be sold in whole or in
part one or more times without prior notice to Plaintiffs." (Compl.
28 | ¶ 15.)

FINDINGS AND RECOMMENDATION    2

1  Knox Road in Boring, Oregon (the "Property").  (Compl. ¶¶ 6,8.)
2  Premier advised Katherine Stolz that it sells one hundred percent
3  of the loans it makes, "therefore, on information and belief,
4  Plaintiffs allege that immediately after closing of the transaction
5  on December 4, 2007, Premier . . . sold their rights in the [loan]
6  to an unnamed third party not identified in any paperwork provided
7  to Plaintiffs." (Compl. ¶ 9.)  Plaintiffs have not had any contact
8  with Premier since the closing of the transaction. (Compl. ¶ 9.)

9       Contemporaneous with closing of the transaction, Premier
10  transferred servicing rights of the loan to IndyMac Bank, FSB
11  ("IndyMac"), although that assignment was never recorded.  (Compl.
12  ¶ 10.)  IndyMac Federal Bank FSB ("IndyMac Federal") subsequently
13  transferred its servicing rights to OneWest.  (Compl.¶ 11; Mem.
14  Supp. Defs.' Mot. Dismiss ("Def.'s Mem.") at 2.)

15       On February 10, 2009, a vice president of IndyMac Federal[4],
16  claiming to be the present beneficiary of the Deed of Trust,
17  purportedly appointed Regional as successor trustee.  (Compl. ¶
18  21.)  The document was recorded in Clackamas County on February 20,
19  2009, under recorders document number 2009-010696.  (Compl. ¶ 21.)

20       On February 11, 2009, a vice president of MERS signed an
21  Assignment of Deed of Trust, whereby MERS purportedly assigned all
22  beneficial interest under the Deed of Trust and loan to IndyMac
23  Federal.  (Compl. ¶ 20.)  The document was recorded in Clackamas

24

25

26       [4] "In July 2008, IndyMac failed, and the [Federal Deposit
27  Insurance Corporation ("FDIC")] transferred IndyMac's assets,
    including [Katherine] Stolz's loan, to a newly created entity run
28  by the FDIC: IndyMac Federal[.]" (Defs.' Mem. at 2.)

FINDINGS AND RECOMMENDATION      3

County on February 20, 2009, under recorders document number 2009-010695. (Compl. ¶ 20.)

On June 9, 2010, an Attorney in Fact of IndyMac Federal signed an Assignment of Deed of Trust, whereby IndyMac Federal purportedly assigned all beneficial interest under the Deed of Trust and loan to OneWest. (Compl. ¶ 22.) The document was recorded in Clackamas County on December 8, 2010, under recorders document number 2010-078659. (Compl. ¶ 22.)

On December 8, 2010, Regional, acting at the direction of OneWest, issued a Notice of Default and Election to Sell the Property pursuant to ORS 86.705 *et seq.*, with a public sale date of April 13, 2011. (Compl. ¶ 23.) On April 8, 2011, Plaintiffs informed Regional that they disputed whether the pending foreclosure by advertisement and sale was being performed properly under Oregon law. (Compl. ¶ 24.) Regional therefore agreed to postpone the April 13, 2011, sale date to May 13, 2011. (Compl. ¶ 24.)

On May 10, 2011, OneWest, acting through its authorized agent John Cockrell, notified Plaintiffs' attorney[5] that the "foreclosure sale scheduled for May 13, 2011, is currently on hold. There is no updated sale date, but the foreclosure is on hold until your inquiries have been responded to." (Compl. ¶ 25.) Such inquiries included a written request related to servicing of the loan, which included the borrower's name and account, and was identified as "Qualified Written Request" ("QWR") being made pursuant to the Real

---

[5] John Cockrell also informed Plaintiff's attorney that he had updated Katherine Stolz's "file to add you as an authorized party." (Compl. Ex. 4 at 1.)

FINDINGS AND RECOMMENDATION    4

1 Estate Settlement Procedures Act, 12 U.S.C. § 2605(e). (Compl. ¶
2 26.) This request was sent to OneWest on May 9, 2011, however,
3 OneWest has never acknowledged receipt, nor have they contacted
4 Plaintiffs with any response or notice regarding a reset sale date.
5 (Compl. ¶ 26.)

6     On June 14, 2011, Regional, acting at the direction of
7 OneWest, held a non-judicial public foreclosure sale of the
8 Property. (Compl. ¶ 27.) Plaintiffs believe Fannie Mae was the
9 successful bidder at the sale and has sought or may seek to obtain
10 a Trustee's Deed naming it as owner of the Property. (Compl. ¶
11 27.) Plaintiffs claim to have been injured as a result of the
12 foreclosure sale held on June 14, 2011, and bring the following
13 claims for relief: (1) declaratory judgment against MERS, OneWest,
14 and Regional; (2) rescission of wrongful foreclosure against MERS,
15 OneWest, Regional, and Fannie Mae; (3) temporary injunction against
16 MERS, OneWest, and Regional; and (4) violation of the Real Estate
17 Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*,
18 against OneWest. (Compl. ¶¶ 29-47.)

19                            **Legal Standard**

20     Rule 12(b)(6) allows a court to dismiss a complaint for
21 failure to state a claim upon which relief can be granted. In
22 considering a Rule 12(b)(6) motion to dismiss, the court must
23 accept all of the claimant's material factual allegations as true
24 and view all facts in the light most favorable to the claimant.
25 *Reynolds v. Giusto*, No. 08-CV-6261, 2009 WL 2523727, at *1 (D. Or.
26 Aug. 18, 2009). The Supreme Court addressed the proper pleading
27 standard under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 550
28 U.S. 544 (2007). *Twombly* established the need to include facts

FINDINGS AND RECOMMENDATION      5

sufficient in the pleadings to give proper notice of the claim and its basis:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id*. at 555 (brackets omitted).

Since *Twombly*, the Supreme Court has clarified that the pleading standard announced therein is generally applicable to cases governed by the Rules, not only to those cases involving antitrust allegations. *Ashcroft v. Iqbal*,---U.S.---, 129 S. Ct. 1937, 1949 (2009). The *Iqbal* court explained that *Twombly* was guided by two specific principles. First, although the court must accept as true all facts asserted in a pleading, it need not accept as true any legal conclusion set forth in a pleading. *Id*. Second, the complaint must set forth facts supporting a plausible claim for relief and not merely a possible claim for relief. *Id*. The court instructed that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1949-50 (*citing Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)). The court concluded: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

FINDINGS AND RECOMMENDATION     6

1    The Ninth Circuit further explained the *Twombly-Iqbal*
2    standard in *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir.
3    2009). The *Moss* court reaffirmed the *Iqbal* holding that a "claim
4    has facial plausibility when the plaintiff pleads factual content
5    that allows the court to draw the reasonable inference that the
6    defendant is liable for the misconduct alleged." *Moss*, 572 F.3d
7    at 969 (*quoting Iqbal*, 129 S. Ct. at 1949). The court in *Moss*
8    concluded by stating: "In sum, for a complaint to survive a motion
9    to dismiss, the non-conclusory factual content, and reasonable
10   inference from that content must be plausibly suggestive of a
11   claim entitling the plaintiff to relief." *Moss*, 572 F.3d at 969.

**Discussion**

13   **I.    Request for Judicial Notice**

14       Defendants ask the court to take judicial notice of five
15   documents: (1) Katherine Stolz's ("Stolz") promissory note; (2) an
16   Assignment of Stolz's Deed of Trust; (3) an Appointment of
17   Successor Trustee; (4) another Assignment of Stolz's Deed of
18   Trust; and (5) a Notice of Default and Election to Sell. (Request
19   for Judicial Notice ("RJN") Ex. A-E.)

20       Federal Rule of Evidence 201, which governs judicial notice
21   of adjudicative facts, provides that:

22       A judicially noticed fact must be one not subject to
         reasonable dispute in that it is either (1) generally
23       known within the territorial jurisdiction of the trial
         court or (2) capable of accurate and ready determination
24       by resort to sources whose accuracy cannot reasonably be
         questioned.
25
26   FED. R. EVID. 201(b). The court must take judicial notice if
27   "requested by a party and supplied with the necessary
     information." FED. R. EVID. 201(d).
28

FINDINGS AND RECOMMENDATION    7

Taking judicial notice of documents that are matters of public record does not convert a motion to dismiss into a motion for summary judgment. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (court may consider judicially noticed documents on Rule 12(b)(6) motion); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (district court, when determining whether complaint fails to state a claim, may take "judicial notice of matters of public record outside the pleadings[.]"). Moreover, in ruling on a Rule 12(b)(6) motion to dismiss, the court is permitted to consider "other sources . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

All of the documents submitted by Defendants are appropriate for judicial notice because Plaintiffs expressly refer to all of the aforementioned documents in their complaint. (Compl. ¶¶ 8, 20-23.) Plaintiffs have offered no opposition to Defendants' request that the court take judicial notice of the relevant documents. Accordingly, Defendants' request for judicial notice (dkt. #13) should be GRANTED.

## II.  Rule 12(b)(6) Motion to Dismiss

Defendants' positions can be summarized as follows: (1) all of Plaintiffs' claims fail as a matter of law and, notably, Plaintiffs' RESPA claim fails because, on its face, the complaint demonstrates OneWest acknowledged receipt of Plaintiffs' QWR; (2) this court lacks diversity jurisdiction and should decline exercising supplemental jurisdiction over Plaintiffs' state law

FINDINGS AND RECOMMENDATION      8

1  claims; and (3) if the court exercises supplemental jurisidcition,
2  Plaintiffs' state law claims should be dismissed with prejudice
3  because they are preempted and/or meritless as a matter of law.
4  (Defs.' Mem. at 3-4.)

5      **A.    Subject Matter Jurisdiction**

6      The complaint alleges that federal question jurisdiction
7  pursuant to 28 U.S.C. § 1331, by virtue of the RESPA claim and
8  supplemental jurisdiction over the state law claims pursuant to 28
9  U.S.C. § 1367. (Compl. ¶¶ 2, 3.) The complaint also alleges
10  diversity jurisdiction pursuant to 28 U.S.C. § 1332, based on the
11  parties being of diverse citizenship and the Property having "a
12  value to be proven at trial but which exceeds $75,000." (Compl.
13  ¶¶ 2, 6.)

14      "The district courts shall have original jurisdiction of all
15  civil actions arising under the Constitution, laws, or treatises
16  of the United States." 28 U.S.C. § 1331 (2007). It is well
17  settled that federal question jurisdiction exists over a RESPA
18  claim. *See Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d 1226,
19  1228 (E.D. Cal. 2010) (noting the same). I will therefore begin
20  my analysis by addressing Defendants' motion to dismiss
21  Plaintiffs' RESPA claim, because survival of the RESPA claim would
22  render Plaintiffs' diversity jurisdiction arguments moot.

23      **B.    RESPA Claim**

24      The complaint indicates that Plaintiffs' QWR was made
25  pursuant to RESPA, 12 U.S.C. § 2605(e), which provides, in
26  pertinent part, that:

27
28      If any servicer of a federally related mortgage loan
       receives a qualified written request from the borrower

(or an agent of the borrower) for information relating
to the servicing of such loan, the servicer shall
provide a written response acknowledging receipt of the
correspondence within 20 days (excluding legal public
holidays, Saturdays, and Sundays) unless the action
requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A) (2007).  The QWR was sent to OneWest on May 9, 2011, and Plaintiffs allege that OneWest "did not acknowledge receipt of the [QWR] within twenty days and in fact has not, to date, contacted Plaintiffs with any procedural or substantive response nor [did they] provide[] any notice regarding a reset sale date. (Compl. ¶ 26.)[6]

### 1. Edward and Terrea Stolz's Standing

Initially, Defendants point out that only Katherine Stolz has standing to bring a RESPA claim because she is the only borrower under the loan. (Defs.' Mem. at 5.) Plaintiffs have provided no response to this issue.

In *Mashburn v. Wells Fargo Bank, NA*, No. 11-179, WL 2940363 (W.D. Wash. July 19, 2011), the district court resolved a similar argument regarding standing under RESPA. There, the plaintiff-father signed a quitclaim deed, conveying his interest in the subject property to his daughter. *Id.* at *1. The plaintiff-daughter subsequently obtained a refinance loan and signed a deed of trust granting the bank a first position lien against the property to secure the loan. *Id.* After defaulting on her loan, the plaintiff-daughter requested information in the form of a QWR

---

[6] Presumably, the QWR was sent from Plaintiffs' lawyers. (*See* Defs.' Mem. at 3) (noting that Plaintiffs' assert a claim under RESPA based on OneWest's failure to acknowledge a QWR sent "from plaintiffs' lawyer.")

FINDINGS AND RECOMMENDATION     10

1   under RESPA.  *Id.*  Defendants argued that the plaintiff-father
2   lacked standing because he was not a borrower under RESPA.  *Id.* at
3   *2.  The *Mashburn* court agreed, noting "RESPA requires creditors
4   to make certain disclosures and respond to certain inquiries by
5   borrowers, including responding to qualified written requests by
6   borrowers."  *Id.* at *3. However, the plaintiff-daughter was the
7   only borrower on the loan, which meant that the plaintiff-father
8   "was not entitled to receive any disclosures or responses from
9   Defendant under RESPA."  *Id.*

10      Here, as in *Mashburn*, there is only one borrower under the
11  loan at issue, Katherine Stolz. (RJN Ex. A at 3; Compl. 8.) I
12  therefore agree with Defendants that Edward and Terrea Stolz[7] lack
13  standing to bring a RESPA claim because they were not entitled to
14  receive any disclosures or responses under RESPA. Accordingly,
15  Edward and Terrea Stolz's RESPA claims should be dismissed.

16              **2. Katherine Stolz's RESPA Claim**

17      As to Katherine Stolz's RESPA claim, Defendants argue that
18  the complaint "shows OneWest did, in fact, acknowledge receipt of
19  her QWR in writing within the 20-day period." (Defs.' Mem. at 5.)
20  Defendants are correct that on May 10, 2011, the day after
21  Plaintiffs' mailed their QWR, OneWest's agent responded to
22  Plaintiff's attorney via email, indicating, "the foreclosure sale
23  scheduled for May 13, 2011 is currently on hold. There is no
24  updated sale date, but the foreclosure is on hold until your
25  inquiries have been responded to." (Compl. Ex. 4.) Plaintiffs
26
27
28      [7] Edward Stolz is the son of Katherine Stolz, who lives in the
    Property with his wife, Terrea Stolz.  (Compl. ¶ 7.)

FINDINGS AND RECOMMENDATION     11

1  acknowledge that the inquiries OneWest's agent referred to in the
2  May 10 email included their QWR.  (Compl. ¶ 26.)  Defendants
3  contend that email qualified as a written response under §
4  2605(e), thereby demonstrating their compliance with RESPA.
5  (Defs.' Mem. at 6.)  In turn, Defendants claim that, "[b]ecause
6  plaintiffs' own Complaint shows that there is no basis for their
7  RE[SP]A claim, this Court should dismiss that claim with
8  prejudice." (Defs.' Mem. at 6.)

9       Relying on § 2605(e)(2), Plaintiffs counter by claiming that
10 "the servicer must respond substantively within sixty days" to a
11 QWR. (Pl.'s Resp. Opp'n Defs.' Mot. Dismiss ("Pl.'s Resp.") at 2.)
12 Section 2605(e)(2) provides, in pertinent part, that:

13       Not later than 60 days (excluding legal public holidays,
         Saturdays, and Sundays) after the receipt from any
14       borrower of any qualified written request under
         paragraph (1) and, if applicable, before taking any
15       action with respect to the inquiry of the borrower, the
         servicer shall—
16

17       (A) make appropriate corrections in the account of the
         borrower, including the crediting of any late charges or
18       penalties, and transmit to the borrower a written
         notification of such correction (which shall include the
19       name and telephone number of a representative of the
         servicer who can provide assistance to the borrower);
20

21       (B) after conducting an investigation, provide the
         borrower with a written explanation or clarification
22       that includes—

23            (i) to the extent applicable, a statement of
              the reasons for which the servicer believes
24            the account of the borrower is correct as
              determined by the servicer; and
25

26            (ii) the name and telephone number of an
              individual employed by, or the office or
27            department of, the servicer who can provide
              assistance to the borrower; or
28

FINDINGS AND RECOMMENDATION     12

1

2      (C) after conducting an investigation, provide the
       borrower with a written explanation or clarification
3      that includes—

4              (i) information requested by the borrower or
               an explanation of why the information
5              requested is unavailable or cannot be obtained
               by the servicer; and
6

7              (ii) the name and telephone number of an
               individual employed by, or the office or
8              department of, the servicer who can provide
               assistance to the borrower.
9

10  12 U.S.C. § 2605(e)(2) (2007). According to Plaintiffs,

11  "Defendants failed to comply with the requirements of this section

12  when they proceeded to foreclosure of the subject property without

13  investigating or responding substantively to the [QWR]." (Pl.'s

14  Resp. at 3.)

15      Here, viewing the facts in the light most favorable to the

16  claimant, I find that Katherine Stolz's complaint states a

17  plausible claim for relief under RESPA. The complaint focuses

18  primarily on OneWest's failure to *acknowledge* receipt of the QWR

19  within twenty days, which, given the record before me, seems

20  unlikely. However, the complaint also unequivocally states that

21  OneWest "has not, to date, contacted Plaintiffs with any

22  procedural or substantive response [to their QWR,] nor [has

23  OneWest] provided any notice regarding a reset sale date." (Compl.

24  ¶ 26.) Such an allegation directly implicates the duties imposed

25  on loan servicers under § 2605(e)(2).

26      Defendants do not debate the merits of any alleged §

27  2605(e)(2) violation based, in part, on Plaintiffs' statement that

28  "[s]hould the Court find merit in the arguments of Defendant

FINDINGS AND RECOMMENDATION    13

1  regarding acknowledgment of the [QWR], the court should consider"
2  Rule 15(a)(2) and grant leave to amend the complaint to clarify
3  the RESPA allegation.    (Pl.'s Resp. at 3.)    Specifically,
4  Defendants state, "[w]ithout debating the merits of Ms. Stolz's
5  proposed new claim (which [is] dubious in light of the timely
6  filed substantive response which is attached hereto as Exhbit F),
7  it is clear that her current claim cannot stand." (Reply Supp.
8  Mot. Dismiss ("Defs.' Reply") at 2.)

9      First, I do not necessarily agree that Exhibit F is
10  dispositive on this matter.  Exhibit F is a copy of a letter dated
11  May 13, 2011, from One West to Plaintiffs' attorney, Michael
12  O'Brien, which clearly indicates it "is sent in response to the
13  letter dated April 8, 2011, addressed to . . . Regional." (Decl.
14  Charles Boyle Ex. F at 1.)   Mentioning a letter purporting to
15  respond to an April 8th letter to the successor trustee is
16  difficult, if not impossible, to interpret as a response to a May
17  9 QWR.   Perhaps the greatest difficulty the court has in
18  ascertaining whether Exhibit F properly responded to Plaintiffs'
19  QWR is that the QWR is not in the record and nothing in the record
20  gives the substance of Plaintiffs' QWR for comparison purposes.
21  Although I view the facts in the light most favorable to
22  Plaintiffs and deem dismissal inappropriate, I do express concern
23  over the validity of their RESPA claim because, during oral
24  argument, Plaintiffs claimed they were not provided the accounting
25  they requested.   However, Exhibit F appears to address such
26  matters. (*See* Decl. Charles Boyle Ex. F at 1-2.)  In any event,
27  a motion to dismiss on this record is not the appropriate manner
28  to address these issues.

FINDINGS AND RECOMMENDATION    14

Secondly, based on the allegations in paragraph 26 of the complaint, I do not believe any clarification of Plaintiffs' RESPA claim is necessary, although I do note that leave would surely be granted in this instance when the ability to cure an alleged deficiency is so readily apparent.

In sum, Katherine Stolz has pled a plausible RESPA claim and Defendants' motion to dismiss should be denied on this ground. Federal question jurisdiction therefore exists in this matter and I need not address Defendants' arguments regarding the existence, or non-existence, of diversity jurisdiction and/or whether this court should exercise supplemental jurisdiction over Plaintiffs' state law claims.

**C. Preemption**

Next, Defendants argue that Plaintiffs' state law claims are preempted by federal law, specifically, the Home Owners' Loan Act ("HOLA") of 1933, 12 U.S.C. §§ 1461-1468.  (Defs.' Mem. at 8.) Defendants claim "[t]his Court has already reached the same conclusion regarding identical claims" in *Copeland-Turner v. Wells Fargo Bank*, No. CV-11-37-HZ, 2011 WL 2650853 (D. Or. July 6, 2011).  (Defs.' Mem. at 8-9.)

**1.  HOLA Generally**

A preemption analysis generally begins "with the assumption that the historic police powers of the States were not to be superceded by the Federal Act under less that was the clear and manifest purpose of Congress." *City of Columbus v. Ours Garage & Wrecking Serv., Inc.,* 536 U.S. 424, 438 (2002).  However, this assumption is "not triggered when the State regulates in an area

where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000). For example, "because there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of Am. v. City and County of S.F.,* 309 F.3d 551, 559 (9th Cir. 2008) (internal quotation marks omitted).

It is well settled that Congress enacted HOLA "to charter savings associations under a federal law, at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent." *Silvas v. E*Trade Mortg. Corp.,* 514 F.3d 1001, 1004 (9th Cir. 2008) The Ninth Circuit has described HOLA and its following agency regulations as a "radical and comprehensive response to the inadequacies of the existing state system, and so pervasive as to leave no room for state regulatory control." *Id.* (citation and internal quotation marks omitted).

HOLA was the vehicle through which "Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts. As the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2. That the preemption is expressed in OTS's regulation, instead of HOLA, makes no difference because federal regulations have no less preemptive effect than federal statutes." *Id.* at 1005 (internal citation and quotation marks omitted). Section 560.2(a) provides, in pertinent part, that:

> OTS hereby occupies the entire field of lending
> regulation for federal savings associations. OTS intends
> to give federal savings associations maximum flexibility

FINDINGS AND RECOMMENDATION     16

to exercise their lending powers in accordance with a
uniform federal scheme of regulation. Accordingly,
federal savings associations may extend credit as
authorized under federal law, including this part,
without regard to state laws purporting to regulate or
otherwise affect their credit activities, except to the
extent provided in paragraph (c) of this section. . . .

*Id.* (quoting 12 C.F.R. § 560.2(a)).   The types of state law

preempted include, "without limitation," state law purporting to

impose requirements regarding:

    ****

    (4) The terms of credit, including amortization of loans
    and the deferral and capitalization of interest and
    adjustments to the interest rate, balance, payments due,
    or term to maturity of the loan, including the
    circumstances under which a loan may be called due and
    payable upon the passage of time or a specified event
    external to the loan;

    ****

    (7) Security property, including leaseholds;

    ****

    (9) Disclosure and advertising, including laws requiring
    specific statements, information, or other content to be
    included in credit application forms, credit
    solicitations, billing statements, credit contracts, or
    other credit-related documents and laws requiring
    creditors to supply copies of credit reports to
    borrowers or applicants;

    ****

    (10) Processing, origination, servicing, sale or
    purchase of, or investment or participation in,
    mortgages[.]

12 C.F.R. § 560.2(b)(4), (7), (9) and (10).

FINDINGS AND RECOMMENDATION      17

As recognized in *Silvas*, courts should follow the following analysis provided by OTS in evaluating whether a state law is preempted under the regulation:

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Id.* (citing OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996)).

### 2. *Copeland-Turner*

As previously referenced, Defendants argue that Plaintiffs' state law claims are preempted, relying solely upon the decision rendered in *Copeland-Turner*. There, the plaintiff-borrower brought a foreclosure action against Wells Fargo Bank, N.A. ("Wells Fargo"), Gorilla Capital, Inc., and Nancy Cary ("Cary"), setting forth a single claim for conversion, based on three theories. *Copeland-Turner*, 2011 WL 2650853, at *1. Plaintiffs first theory in support of his conversion claim was based on an alleged failure of World Savings Bank, F.S.B ("WSB"), to record an assignment of its beneficial interest to Wells Fargo. *Id.* at *8. Or, as Judge Hernandez understood plaintiff's position, that ORS 86.735(1) was violated because WSB was "the beneficiary of the Deed of Trust and to the extent Wells Fargo acted as the beneficiary in the foreclosure process, its actions were invalid

FINDINGS AND RECOMMENDATION   18

because any assignment of the beneficiary interest by WSB to Wells Fargo was required to be recorded and it was not." *Id.* at *11 n.1. This claim was deemed preempted because, "[u]nder the OTS regulation, state laws purporting to impose requirements regarding security property, regarding disclosures made in credit-related statements, and regarding processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages are preempted." *Id.* at *8 (citing 12 C.F.R. §§ 560.2(b)(7), (9), and (10)).

Plaintiff's next theory in support of his conversion claim was based on Cary "having no authority to sign the notice of default as successor trustee because the notice of appointment of successor trustee was not recorded when the notice of default was issued." *Id.* at *8. Judge Hernandez held that, "HOLA also precludes this claim because state laws regarding processing and servicing a mortgage are preempted under 12 U.S.C. § 560.2(b)(10)." *Id.*

Plaintiff's final theory was based on Wells Fargo breaching the Deed of Trust by foreclosing when plaintiff was not in default, having allegedly obtained an agreement to stay the foreclosure pending loan modification. *Id.* After noting a lack of clarity in the Amended Complaint, it was determined that:

> If plaintiff's claim alleges that Wells Fargo breached the Deed of Trust because it foreclosed in the absence of a default, the claim is preempted because the claim is based on an alleged representation made by Wells Fargo in the course of servicing the loan and regarding its secured property. If plaintiff's claim alleges that Wells Fargo breached a subsequent oral modification to the Deed of Trust, the same result occurs: the claim is preempted because it based on an allegation that Wells

Fargo made a particular representation in the course of servicing the loan and regarding its secured property.

*Id.* at *8.[8]

### 3. Application to OneWest

Plaintiffs acknowledge that OneWest Bank is subject to HOLA, as it is a federal savings bank. (Pl.'s Resp. at 6.) Plaintiffs nevertheless argue that their state law claims are not preempted because, unlike *Copeland-Turner*, the original lender in this case, Premier, is an Oregon corporation, not a federal savings bank "subject to the HOLA regulations at the time of the initial loan." (Pl.'s Resp. at 7.)   Plaintiffs cite no authority that supports the proposition that this distinction warrants departure from *Copeland-Turner's* holding.   This argument is therefore assigned little weight.   I would likely find the distinction to be inconsequential, however, considering that "[o]n December 7, 2007, Premier transferred its interest in Ms. Stolz's loan to IndyMac, F.S.B.," *i.e.*, Premiere transferred its interest to a federal savings bank subject to HOLA three days after Katherine Stolz refinanced her property.[9]   (RJN Ex. A at 3-4.)

---

[8]   Judge Hernandez also rejected any argument that "preemption of Oregon's trust deed statutes" implicates the Tenth Amendment. *Id.* at *10.   In this case, aside from the RESPA claim, Plaintiffs' claims are based solely on alleged violations of Oregon's Trust Deed Act.   (Compl. ¶¶ 30-44.)

[9]   In *Quintero Family Trust v. OneWest Bank, F.S.B.*, 2010 WL 2618729 (S.D. Cal. June 25, 2010), the plaintiffs obtained a loan from Clarion Mortgage Capital, Inc., a Colorado Corporation. *Id.* at *1.   The loan was immediately assigned to MERS and two years later the loan was assigned from MERS to IndyMac Federal. *Id.* The court nevertheless determined that the plaintiffs' state law claims brought against OneWest were preempted under HOLA. *Id.* at *6-7.

Plaintiffs claim that even if the court determined that HOLA may apply, their state law claims fall under § 560.2(c)'s "Real property law" exception, which "is specifically listed as a field of state law that is NOT preempted by HOLA."[10] (Pl.'s Resp. at 8.) I find this argument unavailing since, as discussed further below, I find *Copeland-Turner* controlling and Judge Hernandez clearly disposed of this argument by stating:

> [E]ven if none of plaintiff's claims are preempted under subsection 560.2(b), I conclude that they are still preempted under subsection 560.2(c) because each of plaintiff's theories of alleged wrongdoing implicates state laws which affect lending, creating a presumption of preemption, and which directly affect Wells Fargo's lending operations in a significant way, thus having more than an incidental affect on lending operations.

*Copeland-Turner,* 2011 WL 2650853, at *9. Section 560.2(c) "is [also] intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption." *Silvas*, 514 F.3d at 1005.

In *Copeland-Turner*, as in this case, the plaintiff has sought rescission of the foreclosure and an injunction. (*Id.* ¶¶ 38-44; 03:11-cv-00037-HZ (dkt. #13) ¶ 13.) However, unlike, *Copeland-Turner*, a claim for conversion is not at issue here. Nonetheless, the case law seems to focus on the theory underlying the claims at issue, rather than what the claim may conveniently be titled. *See Andrade v. Wachovia Mortg., FSB,* No. 09-CV-0377, 2009 WL 1111182, at *3 (S.D. Cal. April 21, 2009) (indicating that the plaintiff "sought relief under state tort, contract, and real property laws of general applicability," but nonetheless finding the claims

---

[10] Section 560.2(c) provides that the types of state laws "not preempted to the extent that they only incidently affect the lending operations of Federal savings associations" include, contract, commercial, real property and tort law.

FINDINGS AND RECOMMENDATION     21

1  preempted because the state laws, as applied, would regulate
2  lending activity contemplated by § 560.2(b)).   Other district
3  courts have made similar observations.  *See Watkins v. Wells Fargo*
4  *Home Mort.,* 631 F. Supp. 2d 776, 782 (S.D. W. Va. 2008) ("Whatever
5  the claim, a court must look at the underlying allegations
6  proffered in support of the claim and ask on which side of the
7  [HOLA preemption] ledger they fall.")

8      With this in mind, I turn to Plaintiffs' allegations and
9  Judge Hernandez's decision in *Copeland-Turner*.  First, Plaintiffs
10 claim ORS 86.735(1) was violated because the assignment from
11 Premier was never recorded in the County records where the
12 Property is situated.  (Compl. ¶ 32.)   Similarly, in *Copeland-*
13 *Turner*, the plaintiff claimed ORS 86.735(1) was violated due to
14 the failure to record an assignment.  *Copeland-Turner*, 2011 WL
15 2650853, at *11 n.1.   "Under the OTS regulation, state laws
16 purporting to impose requirements regarding security property,
17 regarding disclosures made in credit-related statements, and
18 regarding processing, origination, servicing, sale or purchase of,
19 or investment or participation in, mortgages are preempted."  *Id.*
20 at *8 (citing 12 C.F.R. §§ 560.2(b)(7), (9), and (10)).   HOLA
21 therefore preempts such a claim.

22     Plaintiffs claim MERS was not a beneficiary of the Deed of
23 Trust and had no authority to assign the beneficial interest to
24 IndyMac Federal.  (Compl. ¶ 33.)   In *Parcay v. Shea Mortgage,*
25 *Inc.,* No. CV-F-09-1942 OWW/GSA, 2010 WL 1659369 (E.D. Cal. Apr.
26 23, 2010), the court held that HOLA preempted the plaintiff's
27 claim which included allegations that MERS was not a beneficiary
28

FINDINGS AND RECOMMENDATION    22

1 under the trust deed and that the note was unenforceable by the
2 loan servicer. *Id.* at *4-8.

3     Plaintiffs claim that Regional, who issued the notice of
4 default, was improperly appointed as successor trustee under
5 Oregon's Trust Deed Act. (Compl. ¶¶ 34, 35.) The plaintiff in
6 *Copeland-Turner* also challenged the appointment and subsequent
7 actions taken by a successor trustee in the foreclosure process.
8 However, HOLA precludes such a claim because state laws regarding
9 processing and servicing a mortgage are preempted under 12 U.S.C.
10 § 560.2(b)(10).

11     Next, it is alleged that OneWest "told Plaintiffs in writing
12 that the foreclosure sale had been put on hold and there was no
13 updated sale date. Notwithstanding such assertion and without
14 further notice of any kind to Plaintiffs, One West" directed
15 Regional to proceed and sell the Property. (Compl. ¶ 34.)
16 Similarly, in *Copeland-Turner*, the plaintiff's final theory was
17 based on the bank foreclosing contrary to an agreement to
18 postpone. Thus, as in *Copeland-Turner*, this claim is preempted
19 because it based on an allegation that OneWest made a particular
20 representation in the course of servicing the loan and regarding
21 its secured property.

22     In sum, I agree with Defendants that HOLA preempts all of
23 Plaintiffs' state law claims against OneWest. This decision is in
24 accordance with several district courts who "have concluded that
25 *HOLA preempts state law claims attacking various alleged*
26 *deficiencies in the non judicial foreclosure process.*" *Copeland-*
27 *Turner*, 2011 WL 2650853, at *6 (emphasis added). Perhaps most
28 notably, in *Guerrero v. Wells Fargo Bank N.A.*, No. CV-10-5095-VBF,

FINDINGS AND RECOMMENDATION    23

2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010), the plaintiff's brought the following state law causes of action: (1) to set aside trustee's sale; (2) to cancel trustee's deed; (3) to quiet title; (4) for accounting; (5) for estoppel; (6) breach of contract; (7) breach of the covenant of good faith and fair dealing; (8) fraud; (9) negligence; and (10) declaratory relief. *Id.* at *7. Applying the Ninth Circuit's *Silvas* analysis, the *Guerrero* court concluded, "*[a]ll of Plaintiffs' state law claims fall within the purview of Section 560.2(b), as they attack Defendant's* disclosure and *initiation of the foreclosure process.*" *Id.* at *9 (emphasis added).

### 4. Application to Fannie Mae, Regional, and MERS

Defendants claim "all of plaintiffs' state law claims are preempted by federal law." (Defs.' Reply at 5.) I agree that Plaintiff's claims against OneWest are preempted. However, Plaintiffs have also brought state law claims against Fannie Mae, Regional, and MERS. There is no indication that any of these defendants are subject to HOLA. While the parties do not dispute whether OneWest is a federal savings bank,[11] their briefing does not address the impact my previous ruling would have on the state law claims against Fannie Mae, Regional, or MERS. *Compare Quintero*, 2010 WL 2618729, at *7 (finding a claim not preempted because there was no indication whether a particular defendant qualified as a federal savings association for purposes of HOLA), *with Brown v. Wachovia Mortg. Corp.*, No. CV 11-05062 DDP, 2011 WL 4352524, at *1-3 (C.D. Cal. Sept. 16, 2011) (granting MERS and

---

[11] (Pl.'s Resp. at 6.)

1 Wells Fargo's motion to dismiss after finding plaintiffs' state
2 law claims brought against both defendants preempted under HOLA
3 and § 560.2(b)(10)).   Because the parties have not provided
4 guidance on this issue, I will address the merits of the state law
5 claims to the extent possible.

**D. The Merits of Plaintiff's State Law Claims**

7     Even assuming, *arguendo*, Plaintiffs' state law claims against
8 OneWest were not preempted, a majority of Plaintiffs' state law
9 claims are fundamentally flawed.

**1.   Plaintiffs' MERS-Related Claims**

11     Resolution of Plaintiffs' MERS-related claims requires this
12 court to decide an issue that has divided this district court,
13 that is, whether MERS meets the Oregon statutory definition of
14 "beneficiary," *i.e.*, if MERS and/or its successors have standing
15 to foreclose.  Defendants understandably direct the court to Judge
16 Mosman's decision in *Beyer v. Bank of Am.*, No. CV 10-523-MO, 2011
17 WL 3359938 (D. Or. Aug. 2, 2011) and Judge Stewart's decision in
18 *James v. Recontrust Co.,* 2011 WL 3841558 (D. Or. Aug. 26, 2011).
19 Conversely, Plaintiffs direct the court to Judge Panner's decision
20 in *Hooker v. Nw. Tr. Servs.*, No. 10-3111, 2011 WL 2119103 (D. Or.
21 May 25, 2011) and Bankruptcy Judge Alley's decision in *McCoy v.*
22 *BNC Mortg., Inc.*, 446 B.R. 453 (Bankr. D. Or. 2011).

23     Plaintiffs' claim that, "[f]or every *Beyer v. Bank of Am.*
24 there is a *Hooker v. NW Trustee Services*." (Pl.'s Resp. at 8.)
25 While I cannot fault Plaintiffs for relying on *Hooker*, there are
26 four additional judges in the District of Oregon who have
27 definitively ruled that MERS is a proper beneficiary under Oregon
28 law. *See Burgett v. Mortg. Elec. Registration Sys., Inc.*, No. 09-

FINDINGS AND RECOMMENDATION    25

6244-HO, 2010 WL 4282105, at *2-3 (D. Or. Oct. 20, 2010) (Hogan, J.)[12]; *see also Bertrand v. SunTrust Mortg., Inc.*, No. 09-857-JO, 2011 WL 1113421, at *4-5 (D. Or. Mar. 3, 2011) (Jones, J.); *see also Richard v. Deutsche Bank Nat. Trust Co.*, 2011 WL 2650735, at *2-3 (D. Or. July 6, 2011) (Acosta & Hernandez, JJ.). Moreover, "[t]he majority of Oregon trial courts similarly have concluded that because MERS is named in the trust deed as the beneficiary, it is a beneficiary under" Oregon's statutory definition. *James*, 2011 WL 3841558, at *8 (collecting cases).

Here, the Deed of Trust names MERS as the beneficiary, "acting solely as nominee for Lender and Lender's successors and assigns." (Compl. Ex. 3 at 1.) In accordance with the weight of authority on this issue, I find Plaintiffs' claim that, "MERS was not a beneficiary of the DEED OF TRUST and had no authority to assign the beneficial interest in the DEED OF TRUST to IndyMac Federal" lacks merit under Oregon law. Accordingly, because the trust deed names MERS as the beneficiary and MERS has the right to receive the benefit of the trust deed, I find that MERS was a proper beneficiary under the trust deed.

Next, Plaintiffs argue that ORS 86.735(1) was violated because no assignment from Premier, the original lender, to its successor, IndyMac, was recorded. (Pl.'s Resp. at 8-9; Compl. ¶¶ 10, 32; RJN Ex. A at 3-4.) I reject this argument. Judge Stewart

---

[12] *See also McDaniel v. BAC Home Loans Servicing, LP*, No. 10-6143-HO, 2011 WL 1261387, at *3 (D. Or. Mar. 31, 2011) (Hogan, J.) (noting that in *Burgett* this court found that MERS may be designated as a beneficiary on a Deed of Trust, therefore, "plaintiff's signature on the Deed of Trust explicitly authorizes MERS to act as a beneficiary with the right to foreclose.")

1  thoroughly analyzed and disposed of the same argument in *James*,

2  explaining:

3      **Nothing in Oregon law requires recording of each
       assignment of the trust deed when the underlying note is
4      transferred.** The only recording requirement is found in
       **ORS 86.735(1)** for all "assignments of the trust deed by
5      the trustee or the beneficiary" before a non judicial
       foreclosure by advertisement and sale. However, this
6      statute **by its express terms only requires the recording
       of assignments by the parties who have a recorded
7      interest in the real property providing security, that
       is, 'the trustee or the beneficiary.'**

8
       Although a transfer or assignment of the note transfers
9      the security interest for the protection of the
       beneficiary, it is not the same act as 'an assignment of
10     the trust deed by the trustee or the beneficiary'
       contemplated by **ORS 86.735(1).** That statute **makes no
11     mention of recording a transfer of the promissory note,
       [as] opposed to the deed of trust.** A promissory note is
12     not a conveyance of real property and is not recorded or
       even susceptible to recordation. ORS 93.610, 93.630,
13     205.130. Recording interests in a promissory note would
       not serve the purpose of the recording statutes because
14     the promissory note does not contain a description of
       the property, does not transfer title to real property,
15     and does not affect title.

16     Plaintiffs do not allege that either the Trustee
       (Fidelity National) or the Beneficiary (MERS) made any
17     assignment of the Deed of Trust prior to the assignment
       by MERS to BACHLS [the lender's successor]. Until that
18     point in time, **MERS remained the Beneficiary to act for
       the Lender (NWNG) and its successors and assigns, even
19     if the note was sold to an assignee or acquired by a
       successor. By recording the assignment of the Deed of
20     Trust from MERS to BACHLS, BACHLS then acquired the
       power to act as the Beneficiary, rendering valid its
21     subsequent appointment of RTC as the successor trustee.**

22 *James*, 2011 WL 3841558, at *11 (emphasis added).

23     Similarly, in this case, as in *James*, the Assignment of the

24 Deed of Trust from MERS to the lender's (Premier) successor

25 (IndyMac Federal) was recorded.  (Compl. ¶ 20; RJN Ex. B at 1-2.)

26 In *James*, the lender had transferred the note to Countrywide Bank,

27 who was actually the predecessor in interest to BACHLS.  *Id.* at

28 *2.  In this case, Premier transferred its interest to IndyMac,

FINDINGS AND RECOMMENDATION     27

who was succeeded by IndyMac Federal.  MERS then recorded its assignment to IndyMac Federal, just as MERS recorded its assignment to BACHLS in *James*. Moreover, Plaintiffs do not claim that the Trustee (Transnation Title)[13] or the Beneficiary (MERS) made any assignment of the Deed of Trust prior to the recording. Thus, *James* is dispositive and Premier was not required to record its assignment to IndyMac.

### 2.  The Validity of Regional's Appointment as Successor Trustee

Plaintiffs next contend that on February 10, 2009, IndyMac Federal signed a document appointing Regional as successor trustee.  (Compl ¶ 21; RJN Ex. C at 1-2.)  However, Plaintiffs claim that on February 10, 2009, IndyMac Federal had no authority to appoint a successor trustee because the assignment of the Deed of Trust from MERS to IndyMac Federal did not occur until February 11, 2009. (Compl. ¶ 20; RJN Ex. B at 1-2.)

Although signed on February 10, 2009, the Appointment of Successor Trustee has a notation stating, "*Effective 2/11/2009." (RJN Ex. C at 2.)  Both the Appointment of Successor Trustee and Assignment of Deed of Trust were recorded in Clackamas County on February 20, 2009.  (Compl ¶¶ 20-21; RJN Ex. B, C.) Plaintiffs claim Defendants' motion to dismiss should be denied because this "break[] in the chain . . . require[s] further investigation and evidence", but cite no authority in support of this proposition. (Pl.'s Resp. at 9.)

---

[13] (Compl. Ex. 3 at 1.)

FINDINGS AND RECOMMENDATION     28

1    Defendants, on the other hand, claim "Oregon law has long
2  recognized the enforceability of documents executed on one day but
3  made effective as of a later day." (Pl.'s Reply at 7.) Plaintiffs
4  cite a bevy of cases which found this to be true in other
5  contexts. (Pl.'s Reply at 7.)

6    The United States District Court for the District of Idaho
7  recently addressed this very issue in *Russell v. OneWest Bank FSB,*
8  No. 1:11-cv-00222-BLW, 2011 5025236 (D. Idaho Oct. 20, 2011) (B.
9  Lynn Winmill, C.J.). There, IndyMac Federal signed a document
10 appointing Pioneer Lender Trustee Services, LLC ("Pioneer") as
11 successor trustee on August 4, 2010. *Id.* at *1. On August 5,
12 2010, MERS assigned its beneficial interest to IndyMac Federal.
13 *Id.* Both documents were recorded on August 8, 2010. *Id.*
14 Plaintiffs alleged that IndyMac Federal appointed the successor
15 trustee, Pioneer, "the day *before* MERS assigned its interest in
16 the Deed of Trust to IndyMac Federal." *Id.* at *5. "Plaintiffs
17 therefore allege[d] that IndyMac Federal *had no authority to*
18 *appoint a successor trustee on the day they attempted to do so.*"
19 *Id.* (emphasis added). *Russell* held "the legally relevant date for
20 determining the validity of IndyMac Federal's appointment of a
21 successor trustee is the date on which the appointment was
22 recorded[,]" because under Idaho Code § 45-1504(2),

23       [upon] the election of the beneficiary to replace the
         trustee, the beneficiary shall appoint a trustee or a
24       successor trustee. **Upon recording the appointment of a**
         **successor trustee** in each county in which the deed of
25       trust is recorded, **the successor trustee shall be vested**
         **with all powers of an original trustee.**
26
27 *Id.* at *6 (emphasis added). Based on this language, *Russell* made
28 the pertinent observation that "the beneficiary vests the

FINDINGS AND RECOMMENDATION    29

authority of trusteeship through the act of recording." *Id.* "By August 8, 2010, the date on which IndyMac Federal recorded the appointment of successor trustee, MERS had assigned its interest as beneficiary back to IndyMac Federal." *Id.  Russell* therefore concluded there was "no doubt" IndyMac Federal was the proper party to vest Pioneer with trustee powers on the date they actually assumed trusteeship. *Id.* Further, *Russell* appropriately observed "that a successor trustee is only a nominee without any legal authority until the beneficiary records the appointment of the successor." *Id.* at n.2.

Not only are the facts in *Russell* identical to this case, but Oregon also has a provision similar to that of Idaho Code § 45-1504(2). Specifically, ORS 86.790(3) provides, in pertinent part, that,

> [a]t any time after the trust deed is executed the beneficiary may appoint in writing another qualified trustee. **If the appointment of the successor trustee is recorded** in the mortgage records of the county or counties in which the trust deed is recorded, **the successor trustee shall be vested with all the powers of the original trustee.**

OR. REV. STAT. § 86.790(3) (2009) (emphasis added). Under this language, the beneficiary vests the authority of trusteeship through the act of recording. By February 20, 2009, the date on which IndyMac Federal recorded the appointment of a successor trustee, MERS assigned its interest as beneficiary back to IndyMac Federal. Thus, IndyMac Federal was the proper party to vest Regional with trustee powers on the date Regional actually assumed trusteeship. The premature nomination of Regional on February 10, 2011, does not defeat validity of the recorded transfer of authority on February 20, 2011.

FINDINGS AND RECOMMENDATION     30

Accordingly, this portion of the Complaint should be dismissed because it fails under the *Twombly-Iqbal* standard.

### 3.   Whether Defendants Were Barred From Holding the June 14th Foreclosure Sale

Plaintiffs' final contention revolves around OneWest's representation that "the foreclosure sale scheduled for May 13, 2011 is currently on hold. There is no updated sale date, but the foreclosure is on hold until your inquiries have been responded to." (Compl. Ex. 4 at 1; Compl. ¶¶ 25, 34-35, 39.)  According to Defendants, such a claim fails because the foreclosure was originally set for April 13, 2011.  "On that date, however, OneWest decided to postpone the sale for a month by public proclamation, setting a new sale date of May 13." (Def.'s Mem. at 13.)  Defendants rely on ORS 86.755(2), which states, "[t]he trustee . . . may postpone the sale for one or more periods totaling not more than 180 days from the original sale date, giving notice of each adjournment by public proclamation made at the time and place set for sale."

Plaintiffs counter by arguing, "[c]onspicuously absent from the statute is an authorization under Oregon law for a trustee to provide false and misleading information to a borrower and then hide beyond the 'public proclamation' shield. Such a defense is improper, immoral and assaults the senses of justice." (Pl.'s Resp. at 9.)  According to Plaintiffs, "Defendants were not silent regarding whether or not a sale would be held, Defendants affirmatively stated that the sale was 'on hold until your inquiries have been responded to.'" (Pl.'s Resp. at 9-10.)

Plaintiffs also argue that, even if this court did not find a violation of ORS 86.755(2), "the act of holding [a] sale was a violation of RESPA.  As stated above, RESPA requires that a servicer provide a substantive response to a qualified written request within sixty days and 'before taking any action with respect to the inquiry of the borrower.'" (Pl.'s Resp. at 10) (quoting 12 U.S.C. § 2605(e)(2)).  Plaintiffs' RESPA claim, however, does not provide a basis to invalidate a foreclosure or render a foreclosure wrongful.  *See Falcocchia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d 860, 871 (E.D. Cal. 2010) ("[A]lthough the court finds that plaintiffs have stated a claim under section 5 of RESPA, 12 U.S.C. § 2605, this claim does not provide a basis for injunctive relief. 12 U.S.C. § 2605(f)(1).  The RESPA claim therefore cannot invalidate a foreclosure or render the foreclosure wrongful." (citing *Amodo v. Homeq Servicing Corp.*, No. CIV. S-10-177, 2010 WL 347730, *2 (E.D. Cal. Jan. 22, 2010))).

As to any alleged violation of ORS 86.775(2), I find *Sawyer v. ReconTrust Co., N.A.*, No. CV-11-292-ST, 2011 WL 2619517 (D. Or. May 27, 2011), instructive.  There, a foreclosure was originally scheduled for January 20, 2010.  *Id.* at *2.  The borrower contacted Bank of America Home Loans regarding loan modification and was assured that "there would be no foreclosure sale while her loan modification application was pending." *Id.*  The January 20, 2010 foreclosure sale was postponed and on March 17, 2010, the property was sold.  *Id.*  The borrower sued claiming, amongst other things, that the required foreclosure notices were inadequate because the sale date listed was January 20, 2010, but the actual

sale occurred March 17, 2010.  *Id.* at *3.  Judge Stewart held
that,

> **the sale was postponed until March 17, 2010, but this
> did not require an additional written notice.** Oregon law
> allows the trustee to 'postpone the sale for one or more
> periods totaling not more than 180 days from the
> original sale date, giving notice of each adjournment by
> public proclamation made at the time and place set for
> sale.' ORS 86.755(2). **Absent an allegation that no such
> public proclamation was made, the sale could be
> postponed and held later than the initial date set in
> the Notice of Sale.**

*Id.* at *4 (emphasis added).

Here, as in *Sawyer*, postponing the foreclosure sale did not
require an additional written notice to Plaintiffs.  Plaintiffs
claim that they did not receive notice of when the postponed sale
would occur, however, this does not negate the possibility that
Defendants gave notice of the adjournment by public proclamation
on April 13, 2011, "at the time and place set for sale."  Nor do
Plaintiffs claim otherwise.  Accordingly, although I construe the
allegations in the light most favorable to the non-moving party,
Plaintiffs have not sufficiently pled a violation of ORS
86.755(2).

Taking Plaintiffs' allegation as true as we must on a motion
to dismiss, it is troubling to have the law allow a lender to
allegedly tell a borrower a foreclosure sale is postponed and
won't happen without further notice to the borrower and then have
the lender allegedly deliver that notice solely by announcing the
new sale date by proclamation at the time of original sale when
the borrower is not present in reliance on the advice from the
lender that the sale will not occur then.  While it appears this
situation may be tolerated by existing law, it begs for a

FINDINGS AND RECOMMENDATION     33

correction from the legislature.  That being said, on the existing state of the law and these allegations, I hold my nose while I recommend that I can see no currently viable claim that Defendants violated the provisions of Oregon law governing trust deed foreclosure sales.

### Conclusion

For the foregoing reasons, Defendants' motion (dkt. #10) to dismiss Plaintiffs' complaint in its entirety should be GRANTED in part and DENIED in part.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due February 1, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due February 20, 2012.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 13th day of January, 2012.

/s/ Dennis J. Hubel

_____

Dennis James Hubel
United States Magistrate Judge

FINDINGS AND RECOMMENDATION      34